# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| CLIFFORD D. PEARSON<br><br>        Plaintiff,<br><br>v.<br><br>ELAINE L. CHAO, Secretary,<br>U.S. Department of Transportation,<br><br>        Defendant. |

Civil Action No: 17-1965

## **MEMORANDUM OPINION**

Plaintiff Clifford D. Pearson, a former federal employee, brings this action against Elaine L. Chao, Secretary of the United States Department of Transportation ("DOT" or "Defendant"). Mr. Pearson alleges, *inter alia*, violations of employment discrimination based on his color and race, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 20003 *et seq.* ("Title VII") and discrimination based on his disability pursuant to the Rehabilitation Act of 1973, 29 U.S.C § 790 *et. seq.* ("Rehabilitation Act"). Am. Compl., ECF No. 8. Pending before the Court is defendant's renewed motion to dismiss Mr. Pearson's amended complaint. Upon careful consideration of defendant's renewed motion to dismiss, plaintiff's opposition, the defendant's reply thereto, and for the reasons discussed below, defendant's renewed motion to dismiss is **GRANTED**.

## I. Background

Mr. Clifford Pearson is an African-American man who was formerly employed with DOT. He has several grievances with DOT that relate to DOT's alleged failure to provide reasonable accommodations for him when he was temporarily disabled and DOT's alleged discrimination against him because of his race.

The first grievance relates to DOT's alleged discriminatory treatment based on Mr. Pearson's disability. While employed at DOT, Mr. Pearson suffered an injury to his spine that disabled him temporarily. Am. Compl., ECF No. 8 at 21. This injury led to a diagnosis of a cervical spine fracture, and Mr. Pearson was medically required to wear a cervical collar for an extended period of time. *Id.* From July 2014 to November 2014, he requested accommodations for his temporary disability in the form a "telework agreement, office work station modification, and mix use of telework hours and sick leave." *Id.* at 2, 11. He provided a doctor's note on September 25, 2014, with a diagnosis and a recommendation that Mr. Pearson be allowed to work the maximum number of teleworking days the agency allows weekly for a total of 12 weeks. *Id.* at 24–25. DOT authorized Mr. Pearson's request for reasonable accommodations on October 10, 2014. *Id.* at 32. After authorizing the accommodations, DOT required Mr. Pearson to check in monthly to determine his medical status. *Id.* at 33-34.

The second grievance relates to DOT's alleged discriminatory

treatment based on DOT's failure to promote Mr. Pearson. Mr. Pearson applied for an open position of Realty Specialist and, in early March, the application tracking system indicated that his application met the vacancy requirements and had been referred to a manager. *Id.* at 40. Around that same time, Mr. Pearson sent an anonymous letter to EEOC complaining about discrimination in DOT's hiring practices. *Id.* at 43.

Mr. Pearson was interviewed for the Realty Specialist position, but on July 21, 2016, he received an email informing him that another candidate was selected.[1] *Id.* at 42. Mr. Pearson learned that a Caucasian woman was chosen instead. *Id.* When he asked for advice on ways to be more competitive for any future comparable positions, he was told "you are not politically connected" and "you're taking advice from the wrong people." *Id.* Mr. Pearson alleges he was denied the promotion because of his race, and in retaliation for the anonymous complaint that he filed. *Id.* at 42-43. He also alleges that he was denied the position because of his prior requests for leave and telework

---

[1] Mr. Pearson's complaint contains conflicting dates for when he was denied the promotion. The Amended Complaint initially refers to an April 19, 2016 date as the day he was "not selected for the promotion position of Realty Specialist." Am. Compl., ECF No. 8 at 11. However, later in the complaint, Mr. Pearson states that "[o]n July 21, 2016, [he] received a USDOT email stating . . . 'another candidate was selected'" for the position. *Id.* at 42. Construing the complaint in the light most favorable to Mr. Pearson, the Court will assume he meant the later of the two dates. However, for the reasons that follow, the analysis remains unchanged regardless of which date Mr. Pearson was denied the promotion.

accommodations, and because he refused to disclose his medical information during telework check-ins. *Id.* at 3.

Mr. Pearson's last grievance relates a performance review he received on July 14, 2016, that stated he "Achieved Results." *Id.* at 12. This rating meant that he "achieved the results listed in [his] performance plan" *Id.* Mr. Pearson argues that this performance review "evidenced his ability to perform his duties and qualifications to be promoted from within the Agency." *Id.* at 12.[2]

On October 25, 2016, Mr. Pearson made an initial contact with an Equal Employment and Opportunity ("EEO") counselor to discuss what he believed were discriminatory actions by DOT which he alleged began in September 2014 and continued until October 20, 2016. Am. Compl., Ex. A, ECF No. 9 at 5. He filed a formal complaint on December 30, 2016, alleging that he was discriminated by DOT because of his disability when DOT failed to provide a reasonable accommodation during the months of September to November 2014, and when DOT failed to promote him because of his color and race. Am. Compl., ECF No. 8 at 3. Generally, Mr. Pearson alleged that all African-American employees in his office were not considered for promotion beyond a certain paygrade, while Caucasian employees were considered for promotion. *See id.* at 10.

---

[2] The EEO treated this statement as a separate claim that he was discriminated against because of his race. Am. Compl., Ex. B, ECF No. 9-1 at 4.

4

On February 28, 2017, the Departmental Office of Civil Rights ("DOCR") notified Mr. Pearson of its final decision to dismiss his complaint in its entirety. Am. Compl., Ex. B, ECF No. 9-1 at 5. DOCR first explained that EEOC regulations required Mr. Pearson to make first contact with an EEO counselor within 45 days of the alleged discriminatory actions. *Id.* DOCR reasoned that his first claim based on a request for a reasonable accommodation occurred from "September 2014 to November 2014," over two years before he contacted an EEO counselor. *Id.* His second claim, related to a July 3, 2015[3] leave request, occurred over a year before he contacted the EEO counselor. *Id.* His third claim, that he was discriminated against because of his race when he was notified that he did not get a promotion on April 19, 2016, occurred over six months before he made contact.[4] *Id.* Finally, his fourth claim, that on July 14, 2016, he received a performance appraisal rating of "Achieved Results," occurred over two months before he contacted the EEO counselor. *Id.* Because all of the alleged discriminatory acts occurred outside the 45-day window, Mr. Pearson's complaint was dismissed based on untimely contact with the EEO counselor. *Id.* (citing 29 C.F.R. § 1614.107(a)(1)). DOCR

---

[3] Mr. Pearson was not disabled in July 2015, it is unclear if this date is a clerical error and actually refers to a July 2014 date. Either way, the analysis remains unaffected because either time period would have fallen outside the 45-day window.
[4] Under the July 21, 2016 promotion denial date, this would have been over two months months before his contact with the EEO counselor.

5

informed Mr. Pearson that he could appeal the decision to the Office of Federal Operations ("OFO") or file a civil action in a U.S. District Court. *Id.*

Mr. Pearson notified DOCR of his intent to appeal the final decision to the OFO but failed to file a supporting brief. Am. Compl., Ex. B, ECF No. 9-1 at 8–10. Defendant filed a brief in opposition, arguing the claims were properly dismissed by the agency because Mr. Pearson failed to timely initiate contact with the EEOC. *See generally* Am. Compl., Ex. D, ECF No. 9-2.

OFO reversed the final agency action dismissing the complaint. Am. Compl., Ex. E, ECF No. 9-3. OFO reasoned that although all of the specific examples of racial and disability discrimination cited by DOT in its dismissal occurred well before the 45-day limit, Mr. Pearson "alleged discriminatory events from 2014 through his departure from Agency employment on October 30, 2016." *Id.* at 8. OFO explained that because the incidents that make up a hostile environment claim collectively constitute one unlawful employment practice, the entire claim is actionable, as long as at least one incident that is part of the claim occurred within the filing period. *Id.* at 9. OFO ruled that "various incidents comprising Mr. Pearson's hostile work environment claim occurred within the 45-day period preceding [Mr. Pearson's] EEO counselor contact." *Id.* Specifically, OFO explained that Mr. Pearson noted that although DOT had an official policy of not

granting same-day requests for leave/telework, another employee regularly requested such leave. *Id.* OFO referenced an October 20, 2016 email in which an employee expressed her intention to telework and take leave on that same day. *Id.* at 8.

As to the disability claim, OFO stated that Mr. Pearson's complaint could be construed as a denial of a reasonable accommodation, or as an agency action that caused him to cease receiving a reasonable accommodation earlier than contemplated. *Id.* at 9. OFO explained that "because an employer has an ongoing obligation, to provide a reasonable accommodation, failure to provide such an accommodation constitutes a violation each time the employee needs it." *Id.* (citation omitted). OFO remanded the matter to DOT for further processing and investigation in accordance with OFO's order. *Id.* at 9-10. OFO also informed Mr. Pearson of his right to file a civil action on the underlying complaint. *Id.* at 10. If a civil action is filed, the administrative proceedings would be terminated. *Id.* (citing 29 C.F.R. § 1614.409).

Rather than take his chances with DOT, Mr. Pearson filed a complaint in this Court. Mr. Pearson failed to respond to defendant's first motion to dismiss but subsequently filed an amended complaint alleging several new claims. Am. Compl., ECF No. 8. Defendant has filed a renewed motion to dismiss which is now ripe for adjudication. Def.'s Mot. to Dismiss, ECF No. 15.

**II. Legal Standard**

Both the Rehabilitation Act and Title VII claims impose administrative exhaustion requirements. The exhaustion requirement under the Rehabilitation Act is jurisdictional, and therefore reviewed under the standard set forth in Federal Rule of Civil Procedure 12(b)(1), when a plaintiff "fail[s] to file an administrative complaint or to obtain any administrative decision at all." *Doak v. Johnson*, 798 F.3d 1096, 1103. However, when a plaintiff allegedly fails to exhaust their administrative remedies due to a failure to comply with a regulatory requirement the defect is not jurisdictional, and therefore reviewed under the standard set forth in Rule 12(b)(6). *Id.* The Title VII exhaustion requirement, "though mandatory, is not jurisdictional," and therefore the alleged failure to do so should also be analyzed under Rule 12(b)(6). *Douglas v. Donovan*, 559 F. 3d 549, 556 n.4 (D.C. Cir. 2009).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the court will dismiss a claim if plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, the language in the complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (citing Fed. R. Civ. P.

8

8(a)(2)). A court need not deny a motion to dismiss or convert it to a summary judgment motion simply because it refers to materials outside the pleadings if the materials are attached or referred to in the complaint. *Vassar v. McDonald*, 228 F. Supp. 3d 1, 9-12 (D.D.C. 2016).

**III. Analysis**

Federal law protects federal employees from discrimination on the basis of their race or disability in employment. *See* 29 U.S.C. § 794 (disability); 42 U.S.C. § 2000e-2 (race). If a federal employee wishes to bring suit against his or her employer, the employee must first "navigate a maze of administrative processes." *Niskey v. Kelly*, 859 F.3d 1, 5 (D.C. Cir. 2017).

The procedures are the same for claims under both Title VII and the Rehabilitation Act. 29 C.F.R. § 1614.103(a) (describing the same procedure for claims under either statute). First, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a). The 45-day period begins to run when an employee has a "reasonable suspicion" of a discriminatory action. *Adesalu v. Copps*, 606 F.Supp.2d 97, 102 (D.D.C. 2009). If the matter is not resolved informally, the counselor shall inform the employee in writing of the right to sue, and the employee must file a formal complaint of

discrimination with the agency. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(a)-(c); *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 33 (D.D.C. 2003). The agency must then investigate the matter, after which the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge. See 29 C.F.R. §§ 1614.106(e)(2), 1614.108(f). A complainant may file a civil action within 90 days of receiving a final decision from the agency or after a complaint has been pending before the EEOC for at least 180 days. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; *Price v. Bernanke*, 470 F.3d 384, 389 (D.C. Cir. 2006).

Defendant moves to dismiss all of Mr. Pearson's claims based on one theory: Mr. Pearson failed to exhaust administrative remedies because all acts on which he claims discrimination occurred before the 45-day window. *See generally* Def.'s Mot. to Dismiss, ECF No. 15. The Court addresses each claim in turn.

### A. Rehabilitation Act Claim

"The exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination is Section 501 of the Rehabilitation Act" *Rand v. Geithner*, 609 F. Supp. 2d 97, 100 (D.D.C. 2009). A federal employee "may file a . . . Rehabilitation Act action in federal court only after exhausting their administrative remedies before the relevant federal agency for each allegedly discriminatory act." *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 58 (D.D.C. 2011), *abrogated on other grounds*, *Doak*,

798 F.3d at 1103.

Relevant to this case, the Rehabilitation Act requires that an employee first initiate the administrative process by notifying an EEO counselor within 45 days of the alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1); *see also Rand*, 609 F. Supp. 2d at 100. Any allegations that are not timely raised with an EEO counselor "cannot form the basis for a subsequent suit." *Mohmand v. Broad. Bd. of Governors,* No. CV 17-618, 2018 WL 4705800, at *4 (D.D.C. Sept. 30, 2018)(citing *Mount v. Johnson*, 36 F. Supp. 3d 74, 83 (D.D.C. 2014)). "When an employee alleges that he or she was the victim of a discrete or discriminatory act, the timeliness inquiry focuses on that particular act." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). "Importantly, 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in [a] timely' manner in the administrative process." *Id.* (citation omitted).

It is undisputed that Mr. Pearson made initial contact with an EEO counselor on October 25, 2016, and, therefore, he only timely exhausted "discrete discriminatory act[s]" that occurred within 45 days of this date. *See* 29 C.F.R. § 1614.105(a)(1). Accordingly, this Court may review any conduct that occurred on or after September 10, 2016-- 45 days before Mr. Pearson made initial contact. *See Morgan*, 536 U.S. at 110. However, Mr. Pearson has not

11

identified in his administrative complaint any discriminatory conduct that occurred within the relevant time frame. In Mr. Pearson's administrative complaint, he stated that he was denied reasonable accommodations from "September 2014 to November 2014." Am. Compl., Ex. B, ECF No. 9-1 at 4. Even taken as true, Mr. Pearson had 45 days from the time when he was denied a reasonable accommodation to make an initial contact with the EEO counselor. He did not do so until well over a year later.[5]

The only alleged incident identified in Mr. Pearson's complaint that falls within this time-frame is the allegation that although DOT had a policy of not approving leave and telework requested on the same day, a new employee regularly made such requests whereas Mr. Pearson's similar request on July 3, 2014 was denied. Am. Compl., Ex. A, ECF No. 9 at 20. It appears that OFO was persuaded that this incident brought Mr. Pearson within the 45-day window because Mr. Pearson attached an "October 20, 2016 email from [the other employee] reflecting her intention to telework and take leave on that same day." Am. Compl., Ex. E, ECF No. 9-3 at 8. However, this incident relates to Mr. Pearson's allegation that he was denied a reasonable accommodation in *July*

---

[5] In Mr. Pearson's opposition to the motion to dismiss he concedes that "the facts and claims in [his] EEO complaint are evidence that Defendant denied [his] request for reasonable accommodation [from] August 2 to December 25, 2015." Pl.'s Opp'n, ECF No. 17 at 23. Under this calculation he would have had 45 days (*i.e.* January 20, 2016) to make an initial contact with the EEO counselor. He did not do so until ten months later.

*2014* as evidence by his explicit reference to his July 3, 2014 leave request date. Am. Compl., Ex. A, ECF No. 9 at 20 (DOT "has a policy of not approving leave and telework on the same day as exhibited by Mr. Pearson's leave that was disapproved on 7/3/14."). As such, this incident relates to an alleged discriminatory act that occurred two years-prior to when Mr. Pearson made initial contact with the EEO counselor. Therefore, the discrete discriminatory act was well outside the 45-day time requirement.

OFO noted that in Mr. Pearson's formal complaint that he "provided a chronological narrative of alleged discriminatory events from 2014 through his departure . . . on October 30, 2016." Am. Compl., Ex. E, ECF No. 9-3 at 8. The example cited by OFO is Mr. Pearson's allegation that he was subject to coercive questions causing him to "end his 'reasonable accommodation for telework early.'" *Id.* OFO also noted that because an employer has an ongoing obligation to provide reasonable accommodations, the failure to do so constitutes a violation every time an employee needs the accommodation. *Id.* (citations omitted). The problem with this reasoning is that there is nothing in the record that suggests that Mr. Pearson requested an accommodation at any point in 2016, or that he was denied one. In fact, Mr. Pearson explicitly states that the dates on which he was denied reasonable accommodations were from "September 2014 to October 2014." Am.

Compl., ECF No. 8 at 2.[6] Mr. Pearson, however, did not contact an EEO counselor until over a year later.

Mr. Pearson has failed to allege any discriminatory conduct within the 45-day requirement. Accordingly, the Court concludes that he has failed to exhaust his administrative remedies and **GRANTS** the defendant's motion to dismiss Mr. Pearson's Rehabilitation Act claim.

### B. Title VII Claim

Mr. Pearson's next claim is that DOT discriminated against him on the basis of race in violation of Title VII. Under Title VII, a plaintiff is also required to exhaust his administrative remedies before seeking relief from a federal court. *Bowden v. United States*, 106 F. 3d 433, 437 (D.C. Cir. 1997) ("[Title VII] complainants must timely exhaust these administrative remedies before bringing their claims to court.").

A plaintiff alleging a Title VII discrimination claim is subject to the same exhaustion requirements described above, namely a plaintiff must: (1) contact his agency's EEO office within 45 days of the action giving rise to his discrimination claim, 29 C.F.R. § 1614.105(a)(1); and (2) file a formal complaint of discrimination before filing suit in federal court. 29 C.F.R. § 1614.407; *see also* 42 U.S.C. § 2000e-16(c) (Title VII statutory

---

[6] There is a discrepancy between the dates Mr. Pearson cites in his amended complaint, September to October 2014, and the dates cited in the administrative filings, September to November 2014. In either case, both dates fall well outside the 45-day deadline.

timeliness requirements equivalent to EEOC rules 1614.407(a) and (b)).

Mr. Pearson alleges three discrete discriminatory acts. The first act occurred on July 3, 2015 when his leave request was not approved. The second act was on or about April 19, 2016, when he was not selected for a promotion.[7] The last occurred on July 14, 2016, when he received his performance rating. The 45-day deadlines for each claim would have accrued on August 18, 2015, August 5, 2016, and August 30, 2016, respectively. Mr. Pearson's initial contact post-dated all of these deadlines, and therefore he failed to meet the 45-day requirement for any of his claims.

OFO was apparently convinced that Mr. Pearson's claims survived because he alleged a hostile work environment. *See* Am. Compl., Ex. E, ECF No. 9-3. The Supreme Court has held that a person alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice, and at least one act falls within the filing period. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). In this case, even if Mr. Pearson had properly alleged a hostile work environment, at least one of the alleged discriminatory acts would need to fall within the 45-day initial contact period. However, he has alleged no discriminatory acts

---

[7] Again, Mr. Pearson provides inconsistent dates for when he was denied the promotion. However, neither the April 19, 2016 date or the July 16, 2016 date fell within the 45-day requirement.

that fall within the timeframe. Because none of Mr. Pearson's alleged acts of discrimination fall within the 45-day timeframe, his hostile work environment claim must fail. *See Morgan*, 536 U.S. 101. Therefore, the Court **GRANTS** the defendant's motion to dismiss Mr. Pearson's Title VII claim.

### C. Miscellaneous Claims

In both Mr. Pearson's amended complaint and his opposition to DOT's renewed motion to dismiss, Mr. Pearson asserts several new claims not considered by EEO. The three new claims in the amended complaint are as follows: (1) a claim for retaliation; (2) violations of several Executive Orders and agency policies which were also a breach of contract; and (3) violation of the Constitution. A fourth new claim, one for violation of the Privacy Act, was referenced in Mr. Pearson's opposition to DOT's renewed motion to dismiss. *See* Pl.'s Opp'n, ECF No. 17 at 35 (referencing "privacy claims"). Because Mr. Pearson failed to present these claims to the appropriate agency, the Court may not consider them.

"A plaintiff fails to exhaust her administrative remedies when the complaint she files in federal court includes a claim that was not raised in the administrative complaint." *Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 60 (D.D.C. 2009). As the D.C. Circuit has explained: "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well

as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997). This exhaustion requirement is not a "mere technicality," but "serves the important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision.'" *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).

Mr. Pearson argues that he was retaliated against for filing an anonymous complaint to the EEOC. *See* Am. Compl., ECF No. 8 at 19. This claim is cognizable under two theories. One theory is a Title VII retaliation claim. For the reasons stated above, Mr. Pearson failed to exhaust this claim when he failed to present it in his administrative complaint in a timely manner. *See supra* at 14-15. The second theory is a violation of the Whistleblower Protection Act, Pub. L. No. 101-12, 103 Stat. 16 (1989)(codified in scattered sections of 5 U.S.C.). However, such a claim may not be brought directly in federal court. *See Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002)("Under no circumstances does the [Whistleblower Protection Act] grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance."). Accordingly, the Court **GRANTS** the defendant's motion to dismiss the retaliation claim.

Mr. Pearson next argues that DOT violated several Presidential Executive Orders, DOT policies, contracts, and the Constitution. *See* Am. Compl., ECF No. 8 at 22. Mr. Pearson has also failed to exhaust these claims. The Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111, provides an exclusive system for challenging personnel actions taken against covered federal employees. *Grosdidier v. Chairman*, *Broadcasting Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) stating the CSRA is "comprehensive and exclusive"). The CSRA also applies to constitutional challenges. *Elgin v. Department of Treasury*, 567 U.S. 1, 23 (2012)([B]ecause the MSPB's expertise can otherwise be "brought to bear" on employee appeals that challenge the constitutionality of a statute, we see no reason to conclude that Congress intended to exempt such claims from exclusive review before the MSPB.").

Under the CSRA, the plaintiff has the right to a hearing before the Merit System Protection Board ("MSPB") and is also entitled to judicial review in the United States Court of Appeals for the Federal Circuit if the MSPB issues an adverse final decision. *See Elgin*, 567 U.S. at 5 (explaining statutory scheme). Because Mr. Pearson failed to bring his claims through the CSRA before filing in District Court, the Court **GRANTS** the defendant's motion to dismiss Mr. Pearson's various claims related to the violation of agency orders, breach of contract, violation of

18

Executive Orders, and constitutional claims.

Finally, in his opposition, Mr. Pearson alleges that DOT attempted to force him to disclose protected confidential information in violation of the Privacy Act of 1974, 5 U.S.C. § 552a. Pl.'s Opp'n, ECF No. 17 at 15, 29, 39. As with the other claims, this is the first time Mr. Pearson has brought this claim. Because Mr. Pearson failed to exhaust his administrative remedies the Court **GRANTS** the defendant's motion to dismiss Mr. Pearson's Privacy Act claim. *See Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990)(explaining Privacy Act exhaustion requirements).

**IV. Conclusion**

For the foregoing reasons, the Court **GRANTS** defendant's renewed motion to dismiss. An appropriate order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:   Emmet G. Sullivan**
**United States District Judge**
**February 28, 2019**